UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| S. S.,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>NUZHAT ALI, et al.,<br><br>　　　　Defendants. | Case No.　3:23-cv-05074-JSC<br><br>**ORDER RE: MOTION TO DISMISS**<br>Re: Dkt. No. 26 |

S. S.[1] alleges she was trafficked and forced to work for Defendants.  Now pending before the Court is Defendants' motion to dismiss.  (Dkt. No. 26.)[2]  Defendant Khubaib Falak, appearing specially, moves to dismiss the complaint for insufficient service of process, under Federal Rule of Civil Procedure 12(b)(5).  He also moves with all other Defendants to dismiss the complaint for failure to state a claim upon which relief can be granted, under Federal Rule of Civil Procedure 12(b)(6).  After carefully considering the parties' submissions, and having the benefit of oral argument on January 11, 2024, the Court DENIES Khubaib Falak's motion to dismiss the complaint for insufficient service of process and DENIES in part and GRANTS in part Defendants' motion to dismiss for failure to state a claim.  Plaintiff has established Khubaib Falak was properly served, and Plaintiff properly pleads cognizable claims against each Defendant, with a couple exceptions.

//

//

---

[1] The Court previously granted S.S.'s motion to proceed under a pseudonym.  (Dkt. No. 28.)
[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

# BACKGROUND

## I.  PARTIES

S.S. was born in Pakistan, and moved to the U.S. on approximately February 19, 2019, after receiving a green card.  (Dkt. No. 1 ¶ 29.)  She now lives in California.  (*Id.* ¶ 4.)

S.S. married Wahab Falak in March 2017, in Pakistan.  (*Id.* ¶ 26.)  All other named Defendants are members of Wahab Falak's family:  Nuzhat Ali is the mother of Wahab Falak (*id.* ¶ 6), Rukhsar[3] Ali is the husband of Nuzhat Ali (*id.* ¶ 10), Veena Falak and Aleena Falak are Nuzhat Ali's daughters (*id.* ¶¶ 8-9), and Khubaib Falak is Nuzhat Ali's son.  (*Id.* ¶ 10).

## II.  COMPLAINT ALLEGATIONS

S.S. grew up in Pakistan and was studying computer science when she first met Nuzhat Ali.  (*Id.* ¶¶ 15-17.)  Nuzhat Ali met with S.S.'s family "with the intention of finding a wife for Nuzhat's son, Wahab."  (*Id.* ¶ 18.)  S.S. and Wahab Falak were "arranged to be married by Nuzhat and S.S.'s family."  (*Id.* ¶ 19.)  During their two-year engagement, S.S. remained in Pakistan while Wahab Falak returned to the United States.  (*Id.* ¶ 20.)  Nuzhat Ali told S.S. to stop studying computer science, and instead obtain a cosmetology training certificate because S.S. "would make a lot of money working in partnership with Nuzhat at Nuzhat's salon in California, Zen Salon."  (*Id.* ¶ 22.)  S.S. followed this advice: she quit her computer science education and obtained her cosmetology training certificate.  (*Id.* ¶ 24.)  S.S. and Wahab Falak married in Pakistan in March of 2017.  (*Id.* ¶ 26.)  Shortly after, S.S. received her green card and moved to the United States.  (*Id.* ¶¶ 29-30.)  At the time she moved, S.S. had no family or friends in the United States other than Wahab Falak and his family.  (*Id.* ¶ 28.)

Nuzhat Ali traveled with S.S. to the United States.  (*Id.* ¶ 31.)  From their time in the airport, Nuzhat Ali started acting "controlling, threatening, and abusive towards S.S.," and S.S. became "afraid of her mother-in-law and her temper."  (*Id.* ¶ 34.)  Nuzhat Ali "confiscated S.S.'s passport and maintained possession of S.S.'s green card" from the time it was issued, and "never

---

[3] Plaintiff and Defendants each occasionally appear to refer to Rukhsar Ali by the name "Rukshar Ali."  (*See, e.g.*, Dkt. Nos. 1 ¶¶ 10, 103; No. 34 at 3.)  The Court will identify this individual as "Rukhsar Ali," which matches the spelling in the cases' caption.  The parties are instructed to notify the Court if this spelling is inaccurate.

returned these documents to S.S." (*Id.* ¶¶ 35-36.)

When S.S. arrived at Defendants' home, Wahab Falak "would not let S.S. enter his room." (*Id.* ¶ 37.) The next day, Wahab Falak "moved out . . . to live with his girlfriend." (*Id.*) "S.S. had no idea that her husband, Wahab, had a girlfriend and was heartbroken to learn of this betrayal." (*Id.* ¶ 38.) However, S.S. "held out hope" Wahab Falak would return to her and "Defendants continually assured S.S. that Wahab would return to live with her once he became tired of his girlfriend." (*Id.* ¶¶ 38-39.) Ultimately, Wahab Falak never left his girlfriend. (*Id.* ¶ 39.)

The day after S.S. arrived at Defendants' home, "S.S. was forced to work for Defendants at the Zen Salon," the salon owned by Nuzhat Ali, "and in the families' homes, all without pay." (*Id.* ¶¶ 41-42.) S.S. "typically worked at least six days a week" at Zen Salon or for salon customers in Defendants' home, from "about 8-9 a.m. until 6-8 p.m." (*Id.* ¶ 43.) "S.S. was not provided with or permitted to take meal breaks or rest breaks during her workday," and she was forced to work even if she was sick. (*Id.* ¶¶ 46, 84.) "In multiple instances, Nuzhat pulled S.S. by the hair as she was attempting to rest at Zen Salon and accused her of being lazy." (*Id.* ¶ 47.) Defendants did not pay S.S. for any of her salon-related work. (*Id.* ¶ 54.) When S.S. asked about wages, Nuzhat Ali told S.S. she "was being compensated many times over by being allowed to live at [Nuzhat Ali's] house without having to pay rent, eating [Nuzhat Ali's] food, and being allowed to wear Veena and Aleena's used clothes." (*Id.* ¶ 55.) When customers gave cash tips to S.S., Nuzhat Ali "immediately seized" them and "claimed they were advances for future appointments." (*Id.* ¶ 56.)

S.S. also worked for Defendants at their home. "S.S cleaned, cooked, did laundry, and performed other household tasks seven days a week, from approximately 7 a.m. until leaving to work at the salon, and then again when returning from the salon from 6-8 p.m. until 10 p.m." (*Id.* ¶ 61.) S.S. "was also responsible for caring" for the children of Veena Falak and Aleena Falak. (*Id.* ¶¶ 63-68.) After Wahab Falak and his girlfriend had a child, S.S. was also forced to care for that child. (*Id.* ¶¶ 69-70.) S.S. was not paid "for any of her domestic or childcare work" in Defendants' homes. (*Id.* ¶ 71.)

Defendants "used a variety of measures to keep S.S." from leaving their homes or "having any personal property." (*Id.* ¶ 77.) Defendants "threatened to report S.S. to law enforcement in

3

the United States and to try to have her deported back to Pakistan where they threatened to also report her to law enforcement, if she tried to flee or objected to Defendants' demands for forced labor." (*Id.* ¶ 78.) They told her they would "irreparably harm S.S.'s reputation in Pakistan by blaming S.S. for failing her marriage and spreading rumors of her infidelity, which would cause her to be ostracized and subject to physical harm." (*Id.* ¶ 79.) "Defendants would not allow S.S. to leave their residence without someone accompanying S.S. at all times" and she was "only allowed to leave the residence to go to work." (*Id.* ¶ 80.) Nuzhat Ali "would check S.S.'s phone to monitor and restrict her communications." (*Id.* ¶ 81.) "S.S. was not allowed to speak to anyone outside Nuzhat's presence at the salon," and when S.S. "spoke too long to a customer at the salon on one occasion . . . Nuzhat forcibly dragged S.S. out of the salon to Nuzhat's car, and physically abused her." (*Id.* ¶¶ 83. 91.) "On one occasion, Nuzhat brought S.S. to Marina Bay and told S.S. that she knew people she could call to come chop S.S. into pieces and throw her in the water." (*Id.* ¶ 96.) Another time, "Nuzhat pulled S.S.'s hair so hard that chunks came out and S.S.'s head was bleeding." (*Id.* ¶ 98.)

All Defendants "have been complicit through their condoning and/or involvement in the verbal and physical abuse directed toward S.S." (*Id.* ¶ 103.) Wahab Falak told S.S. that she was "a slave or servant for the family." (*Id.* ¶ 92.) "Wahab, Khubaib, Rukhsar, Aleena, and Veena would tell S.S. she deserved the treatment that she received and that she should obey the family." (*Id.* ¶ 103.)

"[O]n February 14, 2021, S.S. found a rare moment away from her Defendants' supervision and, with the help of a friend, was able to escape." (*Id.* ¶ 110.) S.S. escaped with "$150 that had been gifted to S.S. by a guest of another party that S.S. had previously attended with Defendants." (*Id.* ¶ 111.)

S.S. brings ten causes of action: (1) Forced Labor and Human Trafficking under the Federal Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1589, *et seq.* against all Defendants; (2) Human Trafficking under California Civil Code § 52.5 against all Defendants; (3) Failure to pay minimum wages under the California Labor Code §§ 558.1, 1182.11-1182.13, 1194, 1194.2, 1197, 1197.1, the Industrial Working Commission ("IWC") wage

4

orders 2 and 15, and Richmond Minimum Wage Ordinance No. 15-17 N.S., against all Defendants except Wahab Falak; (4) Failure to pay overtime compensation under California Labor Code §§ 510, 558.1, 1194 and applicable wage orders against all Defendants except Wahab Falak; (5) Failure to provide meal periods under California Labor Code §§ 218.5, 226.7, 512, 558.1 and IWC Wage Order 2 against all Defendants except Wahab Falak; (6) Failure to Provide Rest Breaks under California Labor Code §§, 226.7, 558.1 and applicable wage orders against all Defendants except Wahab Falak; (7) Waiting time penalties under California Labor Code §§ 201, 202, 203, and 558.1 against all Defendants except Wahab Falak; (8) Unlawful taking of gratuities under California Labor Code § 351 against Nuzhat Ali; (9) Solicitation of Employee through Misrepresentation, under California Labor Code §§ 970, 972, against all Defendants; and (10) Violations of the Unfair Competition Law, California Business & Professions Code § 7200 *et seq.*, against all Defendants.

## DISCUSSION

**I.    KHUBAIB FALAK'S MOTION TO DISMISS UNDER RULE 12(B)(5)**

**A.    Applicable Law**

"Federal Rule of Civil Procedure 4 governs service of process in federal district court." *Brockmeyer v. May*, 383 F.3d 798, 800 (9th Cir. 2004). "Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988) (quoting *United Food & Commercial Workers Union v. Alpha Beta Co*., 736 F.2d 1371, 1382 (9th Cir.1984)).

Khubaib Falik, appearing specially, moves to dismiss all claims against him under Federal Rule of Civil Procedure 12(b)(5), as Khubaib Falak contends he was improperly served. "Once service is challenged, plaintiffs bear the burden of establishing that service was valid under Rule 4." *Brockmeyer v. May*, 383 F.3d at 801. "Where factual issues are presented on a motion under Rule 12(b)(5), the court may hear evidence and determine the facts, and may hold an evidentiary hearing if necessary. *Agricola ABC, S.A. de C.V. v. Chiquita Fresh N. Am., LLC*, No. 10:CV-772-IEG-NLS, 2010 WL 4809641, at *3 (S.D. Cal. Nov. 19, 2010) (citing *Old Republic Ins. Co. v.*

*Pacific Financial Svcs.*, 301 F.3d 54, 57 (2d Cir.2002)).

Plaintiff alleges service in accordance with Federal Rule of Civil Procedure 4(e)(2)(B), which provides "an individual . . . may be served in a judicial district of the United States by . . . leaving a copy of [the summons and of the complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." Fed. R. Civ. Pro. 4(e)(2)(B).  "Whether a place is a person's dwelling or usual place of abode for purposes of Rule 4(e)(2)(B) is a highly fact-specific inquiry." *TrustLabs, Inc. v. Jaiyong*, No. 21-CV-02606-CRB, 2021 WL 3129595, at *2 (N.D. Cal. July 23, 2021) (cleaned up).  "A 'person can have more than one dwelling house or usual place of abode for purposes of [Rule 4(e)(2) ].'" *United States v. Wen-Bing Soong*, No. C-13-4088 EMC, 2014 WL 988632, at *2 (N.D. Cal. Mar. 10, 2014) (quoting *Stars' Desert Inn Hotel & Country Club v. Hwang*, 105 F.3d 521, 527 (9th Cir.1997)). However, to qualify under Rule 4(e), the dwelling must have "sufficient indicia of permanence." *Nat'l Dev. Co. v. Triad Holding Corp.*, 930 F.2d 253, 257 (2d Cir. 1991); *see also TrustLabs, Inc. v. Jaiyong*, No. 21-CV-02606-CRB, 2021 WL 3129595, at *2 (N.D. Cal. July 23, 2021) ("A person may have more than one 'dwelling or usually place of abode,' but each must bear 'sufficient indicia of permanence.'").

### B.  Merits of Khubaib Falak's Motion to Dismiss for Insufficient Service of Process

Plaintiff filed a signed service of process from a registered process server indicating the server left copies of Khubaib Falak's summons and complaint with Wahab Falak at 3238 Highpointe Court, Richmond, California, 94806 on October 11, 2023.  (Dkt. No. 16.)  Defendant argues 3238 Highpointe Court was not Khubaib Falak's "dwelling or usual place of abode" under Federal Rule of Civil Procedure 4(e)(2)(B).

Plaintiff has provided sufficient evidence that 3238 Highpointe Court was Khubaib Falak's "dwelling or usual place of abode."  First, Plaintiff's complaint supports an inference Khubaib Falak lived with his immediate family in "Defendants' Richmond home."  (Dkt. No. 1 ¶¶ 6, 11 (explaining Khubaib Falak and Nuzhat Ali both live in Richmond); ¶ 37 (referencing "Defendants' Richmond home").)  Khubaib Falak does not dispute 3238 Highpointe Court was his family's

6

home, nor does he dispute that Wahab Falak, Khubaib Falak's brother, resided at that home. Dennis Kittleson, the registered California process servicer, testifies Wahab Falak "accepted substituted service on behalf of" Khubaib Falak (as well as accepting service for his mother, Nuzhat Ali and his mother's husband, Rukhsar Ali) at the 3238 Highpointe address in Richmond. (Dkt. No. 31-1 ¶ 4.) However, while Kittleson also attempted to have Wahab Falak accept service on behalf of his sister, Aleena Falak, "Wahab Falak refused to accept service, stating that Aleena Falak no longer lived at 3238 Highpointe Court, Richmond, CA 94806." (*Id.*) "Wahab Falak did not make such refusal with respect to Khubaib Falak." (*Id.*) The most reasonable inference from Wahab Falak's acceptance of service on behalf of his brother, but refusal of service on behalf of his sister, is that Wahab Falak considered 3238 Highpointe Court to be the "dwelling or usual place of abode" for his brother, Khubaib Falak. This is prima facie evidence service was proper.

Khubaid Falak has not sufficiently rebutted Plaintiff's prima facie showing of service. He submits a declaration stating he has "resided continuously in Pakistan since October 2022" and "since that time" he has "not had a place of residence or usual place of abode in California." (Dkt. No. 19-1 ¶ 2.) He attached his September 2023 Electricity Consumer Bill which indicates "October 21, 2022 was the connection date for electrical service to [his] residence in Pakistan." (*Id.* ¶ 3.) However, he has not provided any evidence indicating Wahab Falak does not live at the 3238 Highpointe Court address, or that Wahab Falak did not make those statements to the process server, or any explanation of why Wahab accepted service for Khubaib Falak at the 3238 Highpointe Court address. Moreover, Khubaib Falak's declaration does not have a date, and the provided electricity bill only goes to August of 2023—making it unclear where Khubaib Falak was residing in October of 2023 when Plaintiff's process server served Khubaib Falak. Finally, Khubaib Falak's declaration does not indicate he never lived at 3238 Highpointe Court, or that he has not visited that address since he has "resided" in Pakistan, or that he never plans to return there. Indeed, Plaintiff pleads Khubaib Falak is a U.S. citizen (Dkt. No. 1 ¶ 11), further supporting a reasonable inference he resides in Pakistan and Richmond. Since a person can have more than one "dwelling or usual place of abode," under Rule 4(e)(2)(B), Khubaib Falak has not negated Plaintiff's evidence 3238 Highpointe was one of Khubaib Falak's permanent places of

residence as of October 2023.

*United States v. Wen-Bing Soong* is instructive. 2014 WL 988632. In *Soong*, the Soongs argued the government insufficiently served them because they "were actually in Taiwan at the time of service," and the government's service on an address on Oregon Street was not their "dwelling or usual place of abode." *Id.* at *2. However, the court concluded "the government . . . made a prima facie showing that there is sufficient indicia of permanence with respect to the Oregon Street address" because the Soongs' son told the server his "parents were currently traveling" and "did not make any statement that his parents did not reside at the address." *Id.* The court found it "notabl[e]" the reply declaration "did not dispute the 'traveling' statement" and while the son claimed in his declaration "his parents have not resided" at the Oregon Street address for a number of years," that "does not negate the fact that the government has still made out a prima facie case of permanence" based on the son's statement. *Id.* Just as in *Wen-Bing Soong*, Khubaib Falak does not negate Plaintiff's prima facie case of permanence because Khubaib Falak nowhere indicates he did not reside at that address or dispute Wahab Falak's statements.

Khubaib Falak's citation to *Lopez v. City of La Habra Heights* for the proposition there is "no evidence that Wahab was authorized to accept service for Khubaib," is unavailing. (Dkt. No. 34 at 7 (quoting *Lopez v. City of La Habra Heights*, No. 8:21-CV-1193-JGB-MAR, 2021 WL 8441290, at *9 (C.D. Cal. Nov. 10, 2021), *report and recommendation adopted,* No. 821CV1193JGBMAR, 2021 WL 6075931 (C.D. Cal. Dec. 22, 2021).) In *Lopez*, the court analyzed whether certain individuals were "authorized to accept service" on the defendants' behalf, and accordingly, whether service was proper under Federal Rule of Civil Procedure 4(e)(2)(c), which provides an individual within the juridical district can be served by delivering a copy of the summons and complaint "to an agent authorized by appointment or by law to receive service of process." *Id.* at *8-*10. In contrast, Plaintiff served Khubaib Falak according to Rule 4(e)(2)(b), which involves leaving a copy of the summons and complaint at the individual's usual abode or dwelling with "someone of suitable age and discretion who resides there." So, while Rule 4(e)(2)(c) requires the individual accepted service to be "authorized," Rule 4(e)(2)(b)

8

requires no such authorization. The same goes for Khubaib Falak's citation to *Collins v. Barber*, No. CV 10-9614-JFW(E), 2011 WL 13217941, at *2 (C.D. Cal. Mar. 31, 2011), which also analyzes service according to Rule 4(e)(2)(c) rather than Rule 4(e)(2)(b).

So, the Court DENIES Khubaib Falak's motion to dismiss for insufficient service of process, finding Plaintiff properly served him under Rule 4(e)(2)(b).

## II. DEFENDANTS' MOTION TO DISMISS UNDER 12(B)(6)

### A. Trafficking Victims Protection Reauthorization Act ("TVPRA") (first cause of action)

Defendants move to dismiss Plaintiffs' TVPRA claim. The TVPRA 18 U.S.C. § 1589, *et seq.*, creates liability for:

> Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means—
> (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
> (2) by means of serious harm or threats of serious harm to that person or another person;
> (3) by means of the abuse or threatened abuse of law or legal process; or
> (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint[.]

18 U.S.C.A. § 1589(a). Plaintiffs plead Defendants engaged in all four statutorily enumerated means of committing forced labor. (Dkt. No. 1 ¶ 121.)

#### 1. Nuzhat Ali

In their reply,[4] Defendants argue the the complaint does not state a TVPRA claim against Nuzhat Ali because the complaint "does not allege that Nuzhat obtained S.S.'s labor or services" by means of force, threats of force, physical restraint, or threats of physical restraint. (Dkt. No. 34

---

[4] Plaintiff highlights in Defendants' original motion, Defendants "do not actually contest that this cause of action is sufficiently pleaded with respect to Defendant Nuzhat." (Dkt. No. 31.) In Defendants' original motion to dismiss, Defendants ask that the TVPRA claim be dismissed in its entirety, but only make specific arguments as to the TVPRA claim against "Wahab, Khubaib, Rukhsar, Aleena, and Veena." (Dkt. No. 26 at 6-7.) As the Defendants' failed to assert any argument as to why the TVPRA claim against Nuzhat Ali should be dismissed in their opening motion, the argument could be considered waived. However, the Court will consider the merits of Defendants' argument, as those alone provide sufficient reason to reject the argument.

at 3.) To the contrary: the complaint is replete with factually specific allegations about the threats and force Nuzhat Ali used to obtain the labor of S.S. Plaintiff contends Nuzhat Ali "threatened S.S. with physical harm and physically harmed her," (Dkt. No. 1 ¶ 93) (prong one), threatened to "enact irreparable reputations ruin upon S.S" through "spreading rumors of her infidelity, which would cause her to be ostracized and subject to physical harm" (*id.* ¶¶ 79, 100) (prongs two and four), and threatened to "report S.S. to immigration," (*id.* ¶ 88) (prong three). Plaintiff alleges Nuzhat Ali threatened to carry out these actions if S.S. "tried to flee or objected to Defendants' demands for forced labor." (*Id.* ¶ 78.) So, Plaintiff sufficiently pleads Nuzhat Ali violated 18 U.S.C.A. § 1589(a), because she pleads both Nuzhat Ali engaged in the unlawful means enumerated in § 1589(a), and that she did so to prevent Plaintiff from fleeing or stopping her forced labor for the Defendants. *See also Martinez-Rodriguez v. Giles*, 31 F.4th 1139, 1155 (9th Cir. 2022) (explaining in the TVPRA, "the phrase 'by means of' refers to familiar principles of causation and requires a proximate causal link between one or more of the unlawful means enumerated in § 1589(a) and the labor actually obtained").

Defendants' argument rests on the idea "S.S. decided to 'marry Wahab and come to the United States' because 'Nuzhat represented to S.S. that she would have a happy married life, a loving family, a good job, make lots of money, and even have opportunities to further continue her studies as she wished,'" so S.S.'s labor must have been obtained solely by means of these promises rather than any illegal means. (Dkt. No. 34 at 3 (quoting Dkt. No. 1 ¶ 25.).) Whether S.S. initially came to the United States because of such (allegedly false) promises does not mean, as a matter of undisputed fact, that Nuzhat Ali did not subsequently "obtain the labor or services" of S.S. through force and threats of force once she arrived in the United States.

### 2. Remaining Defendants

Defendants also move to dismiss the TVPRA claim against the other Defendants. Defendants argue "[g]laringly omitted from the Complaint . . . are factual averments to support the allegation that Wahab, Khubaib, Rukhsar, Aleena, and Veena wrongfully obtained labor from S.S." (Dkt. No. 26 at 6.) However, the TVPRA also provides for beneficiary liability:

> Whoever knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means, shall be punished as provided in subsection (d).

18 U.S.C.A. § 1589(b).

Defendants argue Plaintiff fails to plead "factual allegations . . . that Defendants Rukhsar and Khubaib provided or obtained labor from S.S., or benefitted financially from her alleged services." (Dkt. No. 34 at 3.) Not so. Plaintiff alleges she was forced to "clean[], cook[]," do "laundry" and "other household tasks seven days a week" in Defendants' home—the home which, construing all inferences in the Plaintiff's favor, *see Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014), Rukhsar Ali shared with both his wife, Nuzhat Ali, and Nuzhat's son, Khubaib Falak. (*Id.* ¶ 61.) Further, Plaintiff adequately alleges Rukhsar Ali had the requisite mens rea because she alleges he "told S.S. that she had been given a nice life and therefore to obey all Defendants' demands, and did not intervene or object when Nuzhat would threaten physical abuse." (*Id.* ¶ 103.) Similarly, Plaintiff pleads Khubaib Falak told S.S. "she deserved the treatment that she received and that she should obey the family." (*Id.* ¶ 103.) Plaintiff therefore plausibly alleges Rushar Ali and Khubaib Falak benefited financially from Plaintiff's services, by receiving the benefit of those services for no pay, and that each Defendant had the statutorily required mens rea.[5]

Defendants also maintain the TVPRA claim against Veena Falak, Aleena Falak, and Wahab Falak must be dismissed because "it is simply not plausible to claim that they engaged in human trafficking by reason of the fact that S.S. allegedly babysat for them. Indeed, by Plaintiff's 'logic,' any relative who does not receive monetary compensation for babysitting for a family member is a victim of human trafficking." (Dkt. No. 34 at 3.) Defendants' histrionics are unpersuasive. Plaintiff does not allege she was voluntarily "babysitting for a family member,"

---

[5] Because the Court finds Plaintiff adequately alleges each Defendant violated the TVPRA's beneficiary liability provision, 18 U.S.C.A. § 1589(b), the Court does not reach Plaintiff's argument that all Defendants "entered into a conspiracy and agreement with each other to perpetrate the harms against S.S." (Dkt. No. 31 at 13.)

11

rather, she alleges she was forced to perform a variety of household tasks, including cooking, cleaning, childcare, and massage therapy for each of these Defendants without compensation. (*See* Dkt. No. 1 ¶¶ 62-71.)  Domestic work, such as childcare, is indeed labor, and can be the basis of a TVPRA claim.  *See, e.g.*, *United States v. Toure*, 965 F.3d 393, 396 (5th Cir. 2020) (affirming conviction of Defendants who forced victim to cook, clean, and watch their children); *Lagayan v. Odeh*, 199 F. Supp. 3d 21, 25 (D.D.C. 2016) (finding plaintiff stated a claim under the TVPRA based on working for defendants as a "live-in domestic worker," and "perform[ing] various household chores, including preparing meals, doing dishes, caring for Defendants' young child, and cleaning the house"); *Lipenga v. Kambalame*, 219 F. Supp. 3d 517, 526 (D. Md. 2016) (same).  This is the law even if the individual is a family member (by marriage or otherwise) of the defendants.  *See Elat v. Ngoubene*, 993 F. Supp. 2d 497, 534 (D. Md. 2014) (denying Defendants' motion for summary judgement on a TVPRA claim in which plaintiff alleged her cousins "obtain[ed] her services through a scheme to make her believe that she would be deported if she did not remain in [defendant's] home as a domestic worker").  Defendants cite no case indicating there is any exception in the TVPRA for childcare or family members.

Defendants do cite to *Jensen v. U. S. Tennis Assoc.*, No. 20-2422-JWL, 2020 WL 6445117, at *5 (D. Kan. Oct. 30, 2020), for the proposition this complaint's allegations are insufficient to state a cause of action under the TVPRA.  In *Jensen*, the plaintiff attempted to hold the United States Tennis Association ("USTA") liable for her tennis coach's abuse.  The court dismissed plaintiff's claim against the USTA, explaining "plaintiff does not allege that she ever notified USTA about Coach Haultain's conduct and she does not allege that anyone employed by USTA witnessed Coach Haultain's conduct or otherwise had any reason to know about Coach Haultain's conduct." *Id.* at *6.  *Jensen* is thus a far cry from this case, in which Plaintiff alleges each Defendant observed her uncompensated work and Nuzhat Ali's violence towards her.   (Dkt. No. 1 ¶ 104 ("On information and belief, Defendants observed at lease some of Nuzhat's physical abuse of and threats towards S.S.  Defendants did not attempt to stop any abuse that S.S. suffered.").) The same goes for the other cases cited by Defendants.  *See Brooks v. Gilman*, 527 F.Supp.3d 117 (D. Mass. 2021) (dismissing an unrepresented plaintiff's TVPRA complaint against the New

12

Hampshire Family Court, various family court judges or court officers, and individuals who participated in or were involved with child-custody proceedings regarding the plaintiff's minor son because the plaintiff's complaint contained only "six conclusory allegations" without any specific dates or reference to specific acts); *Sherman v. Trinity Teen Sols., Inc.*, No. 20-CV-215-SWS, 2021 WL 7286567, at *10 (D. Wyo. Nov. 30, 2021) (dismissing plaintiffs' claim for human trafficking against defendants because the complaint provided "no alleged facts suggesting how it is plausible that [ the defendants] knew or should have known they were participating in an illegal venture of forced labor").

So, Defendants' motion to dismiss the TVPRA claim is DENIED.

### B.  Human Trafficking under California Civil Code § 52.5 Claim (Second Cause of Action)

Defendants also move to dismiss Plaintiff's second claim, which alleges violations of California Trafficking Victims Protection Act ("CTVPA"), California Civil Code § 52.5, as to Wahab Falak, Khubaib Falak, Rukshar Ali, Aleena Falak, and Veena Falak.[6]  California Civil Code § 52.5 provides "[a] victim of human trafficking, as defined in Section 236.1 of the Penal Code, may bring a civil action" for damages or injunctive relief.  Cal. Civ. Code § 52.5.  Section 236.1 of the California Penal Code defines a human trafficker as "[a] person who deprives or violates the personal liberty of another with the intent to obtain forced labor or services."  Cal. Penal Code § 236.1.  Moreover, for purposes of California law:

> "Deprivation or violation of the personal liberty of another" includes substantial and sustained restriction of another's liberty accomplished through force, fear, fraud, deceit, coercion, violence, duress, menace, or threat of unlawful injury to the victim or to another person, under circumstances where the person receiving or apprehending the threat reasonably believes that it is likely that the person making the threat would carry it out.

Cal. Penal Code § 236.1 (h)(3).  Further, "duress" includes "a direct or implied threat to destroy,

---

[6] In Defendants' reply, they allege Plaintiff fails to allege "any" Defendants acted with the intent to obtain forced labor.  (Dkt. No. 34.)  However, Defendants did not move to dismiss the CTVPA claim against Nuzhat Ali in their original motion, and Defendants' reply also does not make any specific reference to this claim against Nuzhat Ali.  So, the Court concludes Defendants do not move to dismiss this claim against Nuzhat Ali. Moreover, even if the Court did construe Defendants' motion as a motion to dismiss the CTVPA claim against Nuzhat Ali, the Court would deny that motion for the same reason it denies the motion as to the other Defendants.

13

conceal, remove, confiscate, or possess an actual or purported passport or immigration document of the victim." Cal. Penal Code § 236.1(h)(4).

Defendants move to dismiss Plaintiff's CTVPA claim for the same reasons Defendants move to dismiss Plaintiff's TVPRA claim: "Plaintiff has not pled any facts supporting" her "conclusory allegation" as to the human trafficking statutes. (Dkt. No. 26 at 7.) Plaintiff's CTVPA claim differs slightly from her TVPRA claim—while not a requirement under the TVPRA, Plaintiff must allege Defendants "intend[ed] to obtain forced labor or services" to plead a CTPVA violation. Cal. Civ. Code § 52.5.

Viewing the complaint in the light most favorable to Plaintiff, Plaintiff adequately alleges a violation of the CTVPA against all Defendants. As discussed above, Plaintiff alleges each Defendant benefited from her labor and was aware of Nuzhat Ali's threats and violence towards Plaintiff. Further, Plaintiff alleges Defendants "restrict[ed] S.S.'s ability to communicate with her family, prevent[ed] S.S. from making any acquaintances outside of the Defendants, [and] confiscate[ed] her phone when she was away from the Richmond home." (Dkt. No. 1 ¶ 77.) Defendants did "not allow S.S. to leave their residence without someone accompanying S.S. at all times." (*Id.* ¶ 80.) Wahab Falak, Khubaib Falak, Rukhsar Ali, Aleena Falak, and Veena Falak told "S.S. she deserved the treatment that she received and that she should obey the family." (*Id.* ¶ 103.) At this early pleading stage, these allegations are sufficient to support the inference each Defendant "intend[ed]" to obtain Plaintiff's "forced labor."

So, Defendants' motion to dismiss count two is DENIED.

**C.     Labor Violation Claims (Causes of Action Three through Eight)**

Plaintiff's third through seventh claims all allege California labor violations against all Defendants except Wahab Falak. Plaintiff's eighth claim alleges Nuzhat Ali unlawfully took Plaintiff's gratuities, in violation of California Labor Code § 351. "To impose liability for violations of the Labor Code, the plaintiff[] must show" each Defendant "is an employer as defined" by the "IWC" in their applicable "wage order." *Mattei v. Corp. Mgmt. Sols., Inc.*, 52 Cal. App. 5th 116, 122–23 (2020), *as modified* (July 14, 2020).

Both sides cite to *Martinez v. Combs*, a California Supreme Court case defining who

qualifies as an employer under the IWC wage orders. *Martinez v. Combs*, 49 Cal. 4th 35 (2010), *as modified* (June 9, 2010). The Supreme Court defined "to employ" for purposes of the IWC orders: "[t]o employ, . . . has three alternative definitions. It means: (a) to exercise control over the wages, hours or working conditions, or (b) to suffer or permit to work, or (c) to engage, thereby creating a common law employment relationship." *Id.* at 64. Both sides agree the IWC definition as described in *Martinez* controls whether Plaintiff had an employment relationship with Nuzhat Ali, Khubaib Falak, Rukhsar Ali, Aleena Falak, and Veena Falak for purposes of all of Plaintiff's labor violation claims. (Dkt. Nos. 31 at 16 (quoting the *Martinez* definition of employer); 34 at 5 (same).) *See also Medina v. Equilon Enterprises, LLC*, 68 Cal. App. 5th 868, 874 (2021) ("Under *Martinez*, employer status for wage-and-hour purposes (including joint employer status) is controlled by the Industrial Welfare Commission's wage orders."); *Mattei*, 52 Cal. App. 5th at 123 (explaining each IWC wage order defines the term "employ" and "employer" in the same way); *Dynamex Operations W. v. Superior Ct.*, 4 Cal. 5th 903, 942–43, 416 P.3d 1, 25 (2018) ("[T]he IWC has the authority, in promulgating its wage orders, to define the standard for determining when an entity is to be considered an employer for purposes of the applicable wage order.").

Plaintiff sufficiently pleads Nuzhat Ali, Aleena Falak, and Veena Falak all were her "employers" because they all "exercise[d] control over the wages, hours or working conditions" of her work.[7] For example, Plaintiff alleges Nuzhat Ali controlled Plaintiff's working conditions at Zen Salon—including forcing Plaintiff to work without meal breaks or rest periods and refusing to pay Plaintiff for her work. (Dkt. No. 1 ¶¶ 43-49.) Similarly, Plaintiff pleads she was "forced to go to Aleena's home to care for Aleena's child, cook, clean, and perform massage therapies for Aleena," (*id.* ¶ 68), and forced to go to Veena Falak's home to do the same for Veena Falak and her child. (*Id.* ¶ 66.) So, Plaintiff adequately pleads these three individuals controlled her wages, hours, or working conditions.

Plaintiff does not specify what specific work she did for Khubaib Falak or Rukhsar Ali, or

---

[7] Because the Court finds Plaintiff sufficiently pleads Nuzhat Ali, Aleena Falak, and Veena Falak are all her employers under the first *Martinez* definition of employer, the Court does not reach whether those Defendants also meet *Martinez*'s alternative definitions of employer.

15

how they controlled her wages, hours, or working conditions. Plaintiff asserts instead these Defendants "suffer[ed] or permit[ted]" her to work, and therefore qualify as employers under the second *Martinez* definition of employer. *Martinez* explains under the "suffer or permit to work" definition, "the basis of liability is the defendant's knowledge of and failure to prevent the work from occurring"—or, put another way, whether Defendants "had the power to prevent plaintiff[] from working." *Martinez*, 49 Cal. 4th at 70. Construing all allegations in Plaintiff's favor, Plaintiff's allegations support an inference Khubaib Falak and Rukhsar Ali lived at Nuzhat Ali's Richmond home. (Dkt. No. 1 ¶¶ 6, 10-11 (alleging Nuzhat Ali, Khubaib Falak, and Rukhsar Ali all live in Richmond); 37 (describing the house as "Defendants' Richmond home")). Plaintiff therefore alleges she did housework at the home of Khubaib Falak and Rukhsar Ali (*id.* ¶ 60-61), and that they were aware of her working conditions and activities. (*Id.* ¶ 106 "Defendants were observers and beneficiaries of S.S.'s forced labor"). As residents of the house where Plaintiff was working, it is reasonable to infer Khubaib Falak and Rukhsar Ali "had the power to prevent plaintiff[] from working." So, Plaintiff adequately pleads Khubaib Falak and Rukhsar Ali were her employers under California law.

Defendants contend they did not employ S.S. rather, Plaintiff's wages, hours, and working conditions were controlled by 'the business known as Zen Salon.'" (Dkt. No. 26 at 8.) This argument fails. First, Plaintiff pleads specific facts alleging she performed household and childcare work for all Defendants at their homes, not at the salon, and that Defendants controlled that work. That alone would be sufficient for a finding of an employment relationship. Second, Plaintiff pleads the salon was called "Zen Salon," but nowhere pleads Zen Salon has a corporate form or is any sort of formal business entity—and Defendants have not provided any information establishing the corporate form of Zen Salon. Instead, the complaint alleges Nuzhat Ali owns the salon and controlled Plaintiff's work there. So, the mere fact the salon has a name does not absolve Nuzhat Ali, or the other Defendants, from liability. And third, an individual may have more than one employer for purposes of these claims—indeed, *Martinez* itself explains "one of the reasons the IWC defined 'employer' in terms of exercising control was to reach situations in which multiple entities control different aspects of the employment relationship." *Martinez*, 49

16

Cal. 4th at 76; *see also Noe v. Superior Ct.*, 237 Cal. App. 4th 316, 333 (2015) ("[E]very employer is liable to its employees for unpaid minimum wage and overtime compensation. . . . [S]ection 1194 permits an employee with multiple employers to seek recovery of unpaid wages from any of them."). So, Defendants' assertion "Zen Salon" controlled Plaintiff's wages, hours, and working conditions does not, as a matter of law, establish the individual Defendants did not control the same.

So, Defendants' motion to dismiss claims three through eight is DENIED.

### D. Solicitation of Employee Through Misrepresentation (Ninth Cause of Action)

Defendants move to dismiss Plaintiff's ninth claim, which alleges all Defendants violated California Labor Code §§ 970, 972, Solicitation of Employee through Misrepresentation. Section 970 prohibits individuals from "directly or indirectly . . . influenc[ing], persuad[ing], or engag[ing] any person to change from . . . any place outside to any place within the State, . . . for the purpose of working in any branch of labor, through or by means of knowingly false representations, whether spoken, written, or advertised in printed form[.]" Cal. Lab. Code § 970. California Labor Code § 972 provides for civil penalties for violations of § 970. Cal. Lab. Code. § 970. As Plaintiff concedes, a plaintiff alleging a violation of California Labor Code § 970 must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

Defendants argue "Plaintiff's Complaint fails to state with particularity the circumstances surrounding the 'knowingly false representations.'" (Dkt. No. 26 at 9.) The Court agrees. While Plaintiff alleges what one defendant—Nuzhat Ali—falsely communicated to Plaintiff (Dkt. No. 1 at ¶¶ 21, 22, 23, 25), she does not allege when or how those representations were communicated to Plaintiff. Accordingly, Rule 9(b) is not satisfied. As to the remaining Defendants, Plaintiff responds they can be liable as Nuzhat's agent. (Dkt. No. 31 at 22.) But what allegations of fact plausibly support the inference Nuzhat Ali was acting as the other Defendants' agent when she made the misrepresentations? So, this claim must be dismissed with leave to amend.

### E. Violation of the Unfair Competition Law (Tenth Cause of Action)

Defendants move to dismiss Plaintiff's tenth claim, which alleges Defendants violated the Unfair Competition Law ("UCL"), California Business & Professions Code § 7200 *et seq.*

17

Plaintiff's UCL claim is premised on Defendants' "violations [of] the California Labor Code, General Minimum Wage Order, the Richmond Wage Ordinance, and the Applicable Wage Orders." (Dkt. No. 1 ¶ 202.) Defendants argue "Plaintiff's UCL claim depends on the viability of her underlying claims," and since Defendant's maintain all the other claims should be dismissed, the UCL claim must be dismissed as well. (Dkt. No. 26 at 9-10 (quoting *Wells Fargo Bank, N.A.*, 2010 WL 424473 (N.D. Cal. Jan. 27, 2010).)

However, as discussed above, the Court declines to dismiss Plaintiff's California Labor Law claims against Nuzhat Ali, Aleena Falak, Veena Falak, Khubaib Falak, and Rukhsar Ali. So, Defendants' motion to dismiss Plaintiff's UCL claim is DENIED as to all Defendants except Wahab Falak. The Court GRANTS Defendant's motion to dismiss Plaintiff's UCL claim against Wahab Falak, with leave to amend.

## LEAVE TO AMEND

Rule 15(a) is very liberal and leave to amend "shall be freely given when justice so requires." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). The Court gives Plaintiffs leave to amend their solicitation of an employee through misrepresentation claim against all Defendants (claim nine) and their UCL claim against Wahab Falak (claim ten). Plaintiff shall file any amended complaint within 21 days.

## CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' motion to dismiss as to Plaintiff's ninth claim: solicitation of an employee through misrepresentation. Further, the Court GRANTS Defendants' motion to dismiss Plaintiff's tenth claim, for a violation of the UCL, against Wahab Falak. The Court DENIES Defendant's motion to dismiss as to all other claims.

Plaintiff shall file any amended complaint within 21 days.

//
//
//
//
//

This Order disposes of Dkt. Nos. 19, 26.

**IT IS SO ORDERED.**

Dated: January 11, 2024

JACQUELINE SCOTT CORLEY
United States District Judge

19